UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

BEST FOOT FORWARD CORP, )
d/b/a Best Foot Forward Corporation )
Podiatric Specialists, )
                                                  Plaintiff, )
v. ) Case Number 4:23-cv-01246
  )
DOUGLAS K. BASSO, ET AL., )
  )
                                        Defendants. )

### STIPULATED TEMPORARY RESTRAINING ORDER AS TO DEFENDANT LAURA ERICKSON

NOW this matter comes before the Court for hearing on plaintiff Best Foot Forward Corp. d/b/a Best Foot Forward Corporation Podiatric Specialists ("BFF") Motion for Temporary Restraining Order. Defendant Laura Erickson ("Erickson") were served with the Verified Complaint and Summons on October 9, 2023, and was served with the Verified Motion for Temporary Restraining Order and the Notice of Hearing on October 11, 2023. BFF and Erickson have reached an agreement and hereby stipulate to the entry of this Order as to Erickson.

The Court, having reviewed the filings, heard the statements of counsel, and having been otherwise duly advised in the premises, makes the following findings of fact and enters the following order:

### Jurisdiction, Venue and Governing Law

Jurisdiction exists in this Court pursuant to 28 U.S.C. §1332 in that there is diversity of citizenship between BFF and all of the defendants and the amount in controversy, exclusive of interest and costs, exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000).

1

Jurisdiction also exists in this Court due to the principles of pendant jurisdiction. Personal jurisdiction over defendants exist in this Court in that defendants (i) transacted business within the state of Missouri; (ii) entered into an express or implied contract, by mail or otherwise, with a resident of the state of Missouri to be performed in whole or in part by either party in such state; and (iii) commission of a tortious act within the state of Missouri.

Pursuant to the terms and conditions of the subject Employment Agreement entered into by BFF and Basso, the laws of the state of Missouri apply thereto. Further, the actions of the parties at issue occurred in the state of Missouri.

## Factual Findings

On or about November 23, 2022, BFF entered into an Employment Agreement ("Employment Agreement") with defendant Douglas K. Basso ("Basso"), a copy of which is attached as *Exhibit 1* to the Verified Complaint [Dkt. 1] providing for the employment by BFF of Basso to provide podiatric medical services on behalf of BFF for its patients. On or about September 16, 2023, Basso informed BFF that he was terminating his employment by BFF, with a proposed effective date of October 15, 2023. A copy of his resignation letter, and the email by which it was sent, is attached as *Exhibit 2* to the Verified Complaint.

Prior to entering into the Employment Agreement with BFF, Basso had formed Basso Family LLC on April 22, 2022, for the purpose of his practice of podiatry in the Kansas City, Missouri area. A copy of that entity's articles of organization are attached hereto as *Exhibit 3* to the Verified Complaint. Unbeknownst to BFF, approximately four (4) months prior to Basso giving his notice to BFF of his intent to terminate his employment by BFF, Basso changed the registered agent and office for Basso Family LLC to himself at 2821 North Ballas Road, Suite C15, St. Louis, Missouri 63131, which BFF has now just learned is where Basso intends to operate

2

his own podiatric practice. A copy of that change of registered agent and office is attached hereto as *Exhibit 4* to the Verified Complaint.

BFF was also informed that defendant Laura Erickson ("Erickson"), an employee of BFF providing medical assistant services for Basso's provision of services for BFF, was also going to be leaving the employment of BFF so as to work for Basso in his new practice.

On or about September 18, 2023, BFF became aware that Basso and defendant Aubree Basso ("Aubree Basso") were contacting BFF's patients and soliciting them to leave BFF and follow Basso to a new practice Basso was establishing. BFF has confirmed multiple instances of wrongful solicitations of BFF's patients as of the time of filing hereof.

BFF also has acquired information that Erickson was purposely delaying obtaining authorizations for surgeries Basso was to conduct on BFF patients until Basso left BFF's employ so that the authorizations could be secured under Basso Family LLC and the proceeds from which would be retained by Basso Family LLC and Basso.

Upon BFF learning of these wrongful actions, BFF immediately terminated Basso's employment and that of Erickson as well on September 19, 2023. Attached as *Exhibit 5* to the Verified Complaint is the notice of Basso's termination served upon him. Upon the termination of Basso and Erickson, both were to leave the BFF premises immediately and leave all BFF property as well, and was told that all of their personal property would be gathered and returned to them. Despite that direction, Basso took a laptop owned by BFF, which BFF reasonably believed was for the purpose of accessing and taking confidential and proprietary BFF information, including patient lists, and other such information.

Further, after both Basso and Erickson was terminated, BFF obtained information that they both tried to access one of BFF's offices to retrieve personal property, and BFF believes to further

3

seek to access and take confidential and proprietary BFF information, including patient lists, and other such information. They were thwarted in this attempt by BFF's timely changing of the locks at the office Basso and Erickson tried to wrongfully enter. Attached as *Exhibit 6* to the Verified Complaint is a text from Erickson sent on September 19, 2023, which confirms those wrongful actions.

On or about September 21, 2023, Erickson made a false review posting on the Better Business Bureau website, using the pseudonym of "Betsy D," a copy of which is attached as *Exhibit 7* to the Verified Complaint.

Basso's Employment Agreement contains an express non-compete restriction ("CNC") at §12 thereof. It states in pertinent part:

a. For a period of one (1) year after the termination of this Agreement for any reason, PHYSICIAN shall not, directly or indirectly, individually or as an officer, director, shareholder, employee, consultant or agent of any corporation, partnership or firm, association, or other corporation engage in podiatric medical practice or provide such medical services at any location within a eight (8) mile radius of any Hospital or Office at which PHYSICIAN provided services on behalf of CORPORATION, where PHYSICIAN provided at least 100 hours of service over the 12 months prior to termination, nor during the Term and for a period one (1) year after expiration or termination, may PHYSICIAN enter into either an employment relationship or independent contractor relationship to provide podiatric medical services, including administrative services for any hospital or health care system at a site within eight (8) miles of any Hospital or Office at which PHYSICIAN provided services on behalf of CORPORATION, where PHYSICIAN provided at least 100 hours of service over the 12 months prior to termination.

b. For a period of one (1) year after the termination of this Agreement for any reason, PHYSICIAN shall not, directly or indirectly, individually or as an officer, director, shareholder, employer, consultant or agent of any corporation, partnership or firm, association, or other corporation, provide podiatric medical services to any patient of Corporation or solicit any such patient to provide such services, or solicit or induce such patients to limit or terminate their professional relationship with CORPORATION. For purposes of this sub-section (b), a patient of the CORPORATION shall be

4

    defined as any patient seen by PHYSICIAN during his employment, or any patient to whom services were provided at any time prior to the termination of this Agreement.

  c. PHYSICIAN shall not, directly or indirectly, in any manner, disclose or divulge to any third party, or use for his/her own benefit or for the benefit of any third person, confidential information of CORPORATION, including, but not limited to, CORPORATION's confidential methods of operation, pricing policies, marketing strategies, trade secrets, knowledge, techniques, data and other information about CORPORATION's operations and business of a confidential nature (collectively, the "Confidential Information"), unless CORPORATION consents in writing to the disclosure or use, or unless PHYSICIAN is under a clear duty to make such disclosure or use and CORPORATION informs PHYSICIAN of such duty prior to any disclosure or use.

  The location of Basso Family LLC is within eight (8) miles of BFF's office located at 8790 Watson Road, Suite 103, St. Louis, Missouri 63119. As such, Basso is prohibited for a period of one (1) year after the termination of his employment from providing podiatric medical services at such location. He is further prohibited from providing podiatric medical services within an eight (8) mile radius of any of BFF's other offices.

  Further, while employed by BFF, Basso provided podiatric medical services on behalf of BFF at the following hospitals, and as such he is prohibited for a period of one (1) year after the termination of his employment from providing podiatric medical services at any location within an eight (8) mile radius of any of such locations: St. Joseph's Hospital Highland (12866 Troxler Ave., Highland, Illinois 62249) and Twin Cities Surgery Center (1101 W. Gannon Drive, Festus, Missouri 63028).

  Pursuant to the CNC, Basso is prohibited for a period of one (1) year after the termination of his employment from providing podiatric services to any BFF patient, or from soliciting any such patient to limit or terminate their relationship with BFF. Pursuant to the CNC, Basso is

5

prohibited from taking and/or using BFF's confidential and proprietary information, trade secrets, means and methods.

Pursuant to subparagraph e of the CNC, Basso has agreed that BFF has the right, "without the requirement of a bond, to an immediate injunction enjoining [Basso's] breach of the covenants contained in this Section 12. In the event that any litigation or judicial proceeding is necessary to enforce the provisions of this Section 12, and [BFF] is the prevailing party in such a proceeding, then [BFF] shall have the right to receive from [Basso] its attorneys' fees, costs and expenses."

In the Employment Agreement, at subparagraph g of §12, Basso agreed and acknowledged that "the scope of the non-compete and non-solicitation covenants herein are no greater than is required for the legitimate business protection of [BFF]; that the covenants do not and will not impose an undue hardship on [Basso]; and the covenants are not injurious to the public."

BFF is entitled to an award of its attorney fees and expenses incurred herein for several reasons. First, the Employment Agreement provides at ¶10 for Basso's indemnification of BFF "from and against any and all losses, claims, damages, liabilities and expenses (including reasonable attorneys' fees) (the "Losses") sustained or incurred by CORPORATION as a result of PHYSICIAN's acts or omissions where PHYSICIAN did not act in good faith or where PHYSICIAN is adjudged to be liable for negligence or recklessness or intentional misconduct in the performance of PHYSICIAN's duties under this Agreement." Second, the Employment Agreement provides in pertinent part at ¶12e that:

> ... Without limiting any other remedy at law or equity available CORPORATION, in the event of a breach of the covenants contained in this Section 12, CORPORATION shall each have the right, without the requirement of a bond, to an immediate injunction enjoining PHYSICIAN's breach of the covenants contained in this Section 12. In the event that any litigation or judicial proceeding is necessary to enforce the provisions of this Section 12, and CORPORATION is the prevailing party in such a proceeding, then CORPORATION shall have the

right to receive from PHYSICIAN its attorneys' fees, costs and expenses. ...

## I. Legal Standards for TRO

In determining whether to grant BFF's request for a TRO, the Court must weigh the following four factors: (1) the probability that movant will succeed on the merits; (2) the threat of irreparable harm to the movant absent the injunction; (3) the balance between the threatened harm to the movant and the harm the injunction would inflict on other interested parties; and (4) the public interest. *Champion Salt, LLC v. Arthofer*, 2021 U.S. Dist. LEXIS 168486, 18 (E.D. Mo. September 7, 2021); *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013) (quoting *Dataphase Sys., Inc. v. C L Syst., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). No single factor is dispositive; rather, all factors should be considered to determine whether on balance they weigh towards granting the injunction. *Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 503 (8th Cir. 1987). District courts have broad discretion when ruling on requests for TROs and preliminary injunctions. *Emerson Elec. Co. v. Rogers*, 418 F.3d 841, 844 (8th Cir. 2005).

### A. BFF has a Strong Likelihood of Success on the Merits.

BFF is not required to show a "probability" that it will succeed. *Dataphase Sys., Inc.*, 640 F.2d at 112-113. Rather, the Court must "ask whether the party requesting a preliminary injunction has a "'fair chance of prevailing.'" *D.M. by Bao Xiong v. Minnesota State High Sch. League*, 917 F.3d 994, 999 (8th Cir. 2019) (quoting *Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (en banc)). The question is whether the balance of equities favors BFF such that justice requires the Court to intervene to preserve the status quo until the merits are determined. *Dataphase Sys., Inc.*, 640 F.2d at 113.

7

The Court finds that the balance of the equities does favor BFF and justice requires the Court to intervene to preserve the status quo until the merits are determined.

1. **BFF is Likely to Prevail on Its Breach of Contract Claim.**

As a threshold matter, the Court finds that there is adequate consideration for the Employment Agreement, and that Basso's employment gave him access to BFF's patients and its confidential and proprietary information, as well as continued at-will employment, salary, and commissions constitutes adequate consideration. *See JumboSack Corp. v. Buyck*, 407 S.W.3d 51, 57 (Mo. Ct. App. 2013). "Missouri courts have recognized that continued at-will employment constitutes consideration for a non-compete agreement where the employer allows the employee 'by virtue of the employment[,] to have continued access to [its] protectable assets and relationships.'" *Id*. at 56-57 (citing cases.)

Likewise, BFF has produced clear evidence of the breach of the restrictive covenants by Basso. Basso has violated the restrictive covenants of the Employment Agreement in the following ways:

- Establishing a competing podiatric practice within eight (8) miles – the location of Basso Family LLC at 2821 North Ballas Road, Suite C15, St. Louis, Missouri 63131, is approximately 6.24 miles from the BFF office at 8790 Watson Road, Suite 103, St. Louis, Missouri 63119.

- Basso, Aubree Basso and Basso Family, LLC have solicited BFF patients to leave their professional relationship with BFF.

- Basso has or is planning to imminently provide podiatric medical services to patients of BFF.

- Basso, Aubree Basso and Basso Family, LLC have used confidential information of BFF for their own benefit, including but not limited to BFF patient lists.

- Basso has or is planning to imminently provide podiatric medical services for a hospital or health care system with eight (8) miles of a hospital or office at which he provided services on behalf of BFF, including but not limited to St. Joseph's

Hospital Highland, Twin Cities Surgery Center, and Anderson Medical Group.

- When Basso was terminated, he left the BFF office taking a BFF laptop with him which he refused to immediately return, and when it was secured from him, the data on the laptop was found to have been wiped off.

Each of these instances are clear breaches of the Employment Agreement. BFF is likely to succeed on the merits of this claim.

### 2. BFF is Likely to Prevail on Its Missouri Uniform Trade Secrets Act Claim.

BFF has also produced clear and indisputable evidence with regard to the use by Basso, Aubree Basso, Basso Family, LLC and Erickson of confidential and proprietary information belonging to BFF, including but not limited to:

- BFF patient information.
- BFF confidential and proprietary information from the BFF laptop wrongfully taken by Basso.

Each of these instances constitute misappropriation under the Missouri Uniform Trade Secrets Act. RSMo § 417.450, *et seq*. ("MUTSA").

Under MUTSA, Basso, Aubree Basso, Basso Family, LLC and Erickson are prohibited from misappropriating BFF's trade secrets. This prohibition encompasses both actual or threatened misappropriation may be enjoined. RSMo § 417.455. A misappropriation occurs in three scenarios: "(1) when a person acquires the trade secret while knowing or having reason to know that he or she is doing so by improper means, (2) when a person who has acquired or derived knowledge of the trade secret discloses it without the owner's consent, or (3) when a person who has acquired or derived knowledge of the trade secret uses it without the owner's consent." ***Cent. Tr. & Inv. Co. v. Signalpoint Asset Mgmt., LLC***, 422 S.W.3d 312, 322 (Mo.

2014).

MUTSA defines a trade secret as "information," including but not limited to a "compilation," that meets two qualifications: (a) it "derives independent economic value...from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use," and (b) it "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." RSMo § 417.453(4); *see also Cent. Tr. & Inv. Co. v. Signalpoint Asset Mgmt., LLC*, 422 S.W.3d 312, 321 (Mo. 2014).

Here the BFF patient information was taken in direct contradiction with the express terms of the Employment Agreement. Further, Basso and Erickson were both aware of other litigation in which BFF is currently involved regarding a former podiatrist that worked for BFF and taking or attempting to take BFF patients away from BFF and practicing within the geographically restricted area.

BFF does know that the laptop taken by Basso and returned with its data wiped out contained many trade secrets of BFF, and reasonably believes that such trade secrets have been likely misappropriated by the defendants herein.

BFF is likely to succeed on the merits of this claim.

    3.  **BFF is Likely to Prevail on Its Tortuous Interference Claim.**

BFF has produced clear and indisputable evidence that Basso, Aubree Basso, Basso Family, LLC and Erickson have solicited BFF patients, and are likely to continue so to do without this Court's intervention, to leave their professional relationship with BFF and obtain podiatric medical services from Basso and Basso Family, LLC. Further, Basso's solicitation of Erickson to leave BFF and join him and Basso Family, LLC interfered with the relationship

between BFF and Erickson.

BFF did not consent to Basso or Basso Family, LLC establishing a practice within the geographic restrictions as set forth in the Employment Agreement. BFF did not consent to the contact of its patients by Basso, Aubree Basso and Erickson to solicit them to leave their professional relationship with BFF and receive podiatric medical services from Basso and Basso Family, LLC. BFF did not consent to Basso and Basso Family, LLC to solicit Erickson to leave BFF and join him in his practice of podiatric medicine.

BFF is likely to succeed on the merits of this claim.

### B. BFF has No Adequate Remedy at Law and Will be Irreparably Harmed if Injunctive Relief is Not Granted.

The second factor the Court must consider in granting BFF the injunctive relief it is seeking is the threat of irreparable harm unless the relief is granted. *Barrett*, 705 F.3d at 320. Under Missouri law, "an employer need only demonstrate that there is a threat of irreparable harm; the employer is not required to demonstrate that actual damage has occurred." *Osage Glass, Inc.*, 693 S.W.2d at 75 (emphasis added); *see also Emerson Elec. Co.*, 418 F.3d at 845 (finding the threat of the sales personnel luring away Emerson's customers met the irreparable harm requirement because it "would be difficult to measure the amount of damages caused by the unfair competition and impossible to remedy fully because the consumers could not be forced to purchase Emerson's products."). Where a party is in possession of the other party's trade secrets and confidential and proprietary information, and works in competition to that party, injunctive relief is warranted to prevent irreparable harm. *Wenger Mfg., Inc. v. Butler*, 2005 WL 1198862, at *2 (W.D. Mo. May 19, 2005).

This factor is easily met with the facts in hand at this time, which will only build as more

instances of patient solicitation and practice within the restricted geographic limits is discovered. Damages are difficult, if not impossible to determine under these circumstances, proving no adequate remedy at law. *See Champion Salt, supra* at *34-35; *Panera, LLC v. Nettles*, 2016 WL 4124114, at *5 (E.D. Mo. Aug. 3, 2016). "Courts in the Eighth Circuit routinely recognize a threat of irreparable harm in similar circumstances." *Champion Salt, supra* at *35.

BFF has established that it has no adequate remedy at law and will be irreparably damaged if injunctive relief is not entered by the Court.

### C. The Harm to BFF Without Injunctive Relief Outweighs Any Harm to Defendants if Relief is Granted.

The next factor the Court must consider in granting BFF the injunctive relief it is if the harm to BFF in not granting the relief outweighs the harm to defendants in granting the relief. *See Barrett*, 705 F.3d at 320. The actions of the defendants has already caused damage to BFF by the diversion of its patients away from it, but those damages are not able to be fully determined at this time. *Affidavit of Laura Frerking at ¶18*. Based upon the continuing actions of the defendants, it is a practical certainty that their wrongful actions will continue, both violating the Employment Agreement, the MUTSA, and wrongfully interfering with the relationship between BFF and its patients. All repercussions of those actions lay at the feet of the defendants, and have been done knowingly and willfully in violation of their contractual and legal obligations. *See Emerson Elec. Co.*, 418 F.3d at 846 (finding that the former employee "knowingly and voluntarily agreed to be restricted by the covenant, and any perceived harm to him by the enforcement of the agreement is outweighed by the harm foreseeable to Emerson.").

The Court finds that the Employment Agreement restrictive covenants are reasonable and protect a legitimate business interest. In order to be granted a temporary restraining order

12

for an employment covenant not to compete, the restraint must be protecting a legitimate protectable interest and reasonable as to the time duration and the space (radius) of the restriction. *Osage Glass, Inc. v. Donovan*, 693 S.W.2d 71, 74 (Mo. banc 1985). In *Willman v. Beheler*, 499 S.W.2d 770 (Mo. 1973), the court held that a covenant not to compete between two physicians was valid and the argument for public policy prohibiting a physician to work did not outweigh the need to enforce contractual obligations. *See also Jefferson City Med. Grp., P.C. v. Brummett*, 665 S.W.3d 380 (Mo. Ct. App. 2023) (finding that a doctor violated a covenant not to compete and granted a TRO). *See also Champion Salt, supra* at *23 ("The Court finds that the restrictive covenants are "no more restrictive than necessary to protect [Champion's] legitimate interests" because they are reasonably limited in time (two years following termination) and scope (competitive services and interacting with former customers in the Territory) and therefore enforceable under Missouri law.)

In *AEE-EMF v. Passmore*, 906 S.W.2d 714, 719 (Mo. Ct. App. 1995), the court found that the restrictive covenant was enforceable because it was protecting a legitimate protectable interest, which has customer lists. In *Mid-States Paint & Chem. Co. v. Herr*, 746 S.W.2d 613 (Mo. Ct. App. 1988), the court found that the employer's covenant was enforceable because there were protectable interests in trade secrets and customer contacts that were needed to be protected in order to prevent unfair competition by the former employee.

Further, Basso expressly agreed and acknowledged the reasonableness of the restrictions in the Employment Agreement. It provides at ¶12d that:

> PHYSICIAN acknowledges that the restrictions set forth this Sections 12(a), (b), and are reasonable in scope and essential to CORPORATION's legitimate business interests and that the enforcement thereof will not in any manner preclude PHYSICIAN from becoming gainfully employed in such manner and to such extent as to provide a standard of living for PHYSICIAN, the members of PHYSICIAN's

family, and those dependent upon PHYSICIAN of at least the sort and fashion to which PHYSICIAN and they have become accustomed and may expect.

The harm to BFF without injunctive relief outweighs any harm to defendants if relief is granted.

### D. Granting BFF The Requested Injunctive Relief Serves the Public Interest.

The last factor the Court must consider in granting BFF the injunctive relief it is if granting the relief serves the public interest. *See Barrett*, 705 F.3d at 320. BFF has a legitimate interest in protecting its patient relationships and its confidential and proprietary information.

"[F]undamental public policy is served…by the preservation of the obligations of contracts. Enforcement of restrictive covenants prevents an employee from using customer contacts to the former employer's disadvantage." *Mayer Hoffman McCann P.C. v. Barton*, 2009 WL 900741, *22, n. 167 (W.D. Mo. April 1, 2009) (quoting *Long v. Huffman*, 557 S.W. 2d 911, 915 (Mo. App. 1977)) (citing *Emerson Elec. Co.*, 418 F.3d, at 845). The public interest calls for enforcement of valid non-competition agreements and the enforcement of statutes like MUTSA. *See Panera*, 2016 WL 4124114, at *5.

Granting BFF the requested injunctive relief serves the public interest.

### Conclusion

Considering all factors required under Missouri law, BFF has carried its burden and is entitled to an order of this Court granting it the injunctive relief requested. Without the Court's grant of injunctive relief, Erickson will or may continue to solicit or attempt to solicit business or trade from BFF's actual or prospective clients or divert or attempt to divert business away from BFF. Because of the actions of Erickson as described in BFF's Verified Complaint and herein, BFF has a good faith reason to believe that its business interests are being compromised by said

14

defendants. Without the intervention of this Honorable Court, Erickson may continue to use and/or disclose some or all of the confidential and proprietary information belonging to BFF, constituting misappropriation under the MUTSA.

BFF's trade secrets are specifically inclusive of confidential and proprietary intellectual property and trade secrets such as pricing, client lists, customer service methods and protocols and all other trade secrets of BFF, as the term "trade secrets" is defined in the MUTSA. Due to the nature and particular facts of this action, BFF should not be required to post a bond.

### Temporary Restraining Order

For the foregoing reasons, the Court finds that all factors have been meet with respect to BFF's request for a temporary restraining order against Erickson. Accordingly,

**IT IS ORDERED** that plaintiff Best Foot Forward Corp. d/b/a Best Foot Forward Corporation Podiatric Specialists' Verified Motion for Temporary Restraining Order [Dkt. 4] as to defendant Laura Erickson is **GRANTED**.

**IT IS FURTHER ORDERED** that defendant Laura Erickson ("Erickson") is hereby temporarily restrained until further order of this Court from directly or indirectly:

  a. Soliciting or attempting to solicit BFF's patients to limit or leave their relationship with BFF, including but not limited to for the express purpose of Basso and Basso Family LLC providing podiatric medical services for them;

  b. Providing podiatric medical services within eight (8) miles of any BFF office or any hospital at which Basso provided services on behalf of BFF; and

c. Taking, using and/or disclosing confidential and proprietary information belonging to BFF without BFF's consent.

**IT IS FURTHER ORDERD** that due to the nature and particular facts of this action, BFF shall not be required to post any security with the Clerk of the Court.

**IT IS SO ORDERED.**

Dated: 10-16-2023

**HONORABLE HENRY E. AUTREY**

Submitted and approved by:

**MURPHY LAW**

By  s/ Mark D. Murphy
  **MARK D. MURPHY,** #33698 (MO)
  mmurphy@MurphyLaw.co
  10801 Mastin Street, Suite 790
  Overland Park, Kansas 66210-1776
  (913) 600-7900
  Fax (913) 600-7823

Attorneys for Plaintiff Best Foot Forward Corp, d/b/a Best Foot Forward Corporation Pediatric Specialists

Laura Erickson (Oct 15, 2023 18:34 CDT)

**LAURA ERICKSON,** *Pro Se*